**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>   v.<br><br>LEOPOLDO LORA AGUILERA,<br><br>                          Defendant. | Case No. 19-cr-01955-BAS-1<br><br>**ORDER GRANTING MOTIONS FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 98, 108)** |

      On February 28, 2023, the Court sentenced Defendant Leopoldo Lora Aguilera to 33 months in custody—of which he has served approximately 12 months. (ECF No. 91.) Mr. Aguilera moved pro per to reduce his sentence to time served because of extraordinary and compelling circumstances. (Defendant's Motion, ECF No. 98.) The Court appointed counsel to represent Mr. Aguilera, and counsel filed a supplemental motion for compassionate release. (ECF No. 105; Supplemental Motion, ECF No. 108.) The Government opposes (Government's Response, ECF No. 113), and defense counsel replies (ECF No. 115). For the reasons stated below, the Court **GRANTS** Mr. Aguilera's motions.

## I.   BACKGROUND

Mr. Aguilera was employed by Wells Fargo Bank as a personal banker. (Presentence Report ("PSR") ¶ 4, ECF No. 31.)  He used this position to create false accounts at Wells Fargo.  These accounts were used to deposit funds from a San Diego based money laundering organization.  Once the funds were deposited, Mr. Aguilera would then wire transfer the money to Mexico.  In this fashion, he was able to transfer millions of dollars from the United States to Mexico. (*Id.*)  Mr. Aguilera pled guilty to conspiracy to money launder and two counts of bank fraud.  (ECF No. 25.)

At the time of his sentencing, Probation reported that Mr. Aguilera had diabetes and high blood pressure.  (PSR ¶ 49.)  He had also recently had gallbladder surgery. (*Id.*)  Further, Mr. Aguilera had glaucoma and had undergone four corneal transplants. (*Id.*)  In June 2022, before going into custody, Mr. Aguilera underwent surgery to remove his right eye, and in November 2022, a prosthetic eye was installed.  (Defendant's Motion 20.)  A doctor at the Shiley Eye Institute where this surgery was performed states:

> It is important that [Mr. Aguilera] is able to appropriately clean the socket and keep his conformer in place to prevent infections.  Additionally, he requires monocular precautions as he only has one eye remaining and per his chart needs prednisolone and combigan drops in that eye.

(*Id.* 33.)  The doctor also noted that continued eye appointments "are critical in ensuring proper treatment is provided to maintain vision."  (*Id.* 34.)  Specifically, on December 9, 2022, the doctor recommended that Mr. Aguilera return to see the doctor in six months.  (Supplemental Motion Ex. Q, at 31.)

Defendant, who is now 61 years old, has not seen an eye specialist of any kind (optometrist, ophthalmologist, or ocularist) in the 12 months he has been in custody.  (Supplemental Motion Exs. E, F, Q.)  At intake on May 8, 2023, doctors at the Bureau of Prisons ("BOP") made a consultation request for Mr. Aguilera to see an eye specialist with a target date of July 28, 2023, but apparently this request has gone unheeded.  (*Id.* Ex. Q, at 23; Ex. E.)  Despite Mr. Aguilera's repeated pleas, the prison authorities have failed to give Mr. Aguilera his prosthetic eye removal tool required to remove and clean his

prosthetic eye and right eye socket. (*Id.* Exs. D, E, F.) Mr. Aguilera also presents evidence that he has failed to get a renewal of his prednisolone drops for treatment of the glaucoma in his left eye. (*Id.* Exs. E, F.) He complains that he has blurry vision, pain, and headaches, and that, because the prison authorities have not provided him with sunglasses, he cannot go outside because the light increases his headaches. (*Id.*)

Mr. Aguilera submitted requests for compassionate release both to FCI Mendota, where he was first held, and to FCI Lompoc, where he is now being held. (Supplemental Motion Exs. C, G.) Neither Warden has responded.

## II.   ANALYSIS

### A.   Exhaustion of Administrative Remedies

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 825–26 (2010). A narrow exception, compassionate release, allows a court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

However, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

Section 3582 provides two alternative routes to exhaustion. In the first, a petitioner files a petition, which is acted on by the Warden and the petitioner proceeds to continue to fully exhaust his or her administrative remedies by appealing this refusal from the Warden. In the second, the Warden takes no action, 30 days lapse and, because of the Warden's failure to act, the petitioner may proceed without fully exhausting his or her administrative remedies.

In this case, Mr. Aguilera provided evidence, and the Government does not dispute, that he submitted requests to Wardens at both facilities where he was held, and neither Warden responded within 30 days. Thus, Mr. Aguilera has exhausted his administrative remedies.

**B.     Extraordinary and Compelling Circumstances**

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C.] section 3553(a)" if the court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  As the movant, the defendant bears the burden to establish that he is eligible for compassionate release.  *United States v. Holden*, 452 F. Supp. 3d 964, 966 (D. Or. 2020).

The Sentencing Commission issued policy statements providing additional definitions of "extraordinary and compelling" reasons on November 1, 2023.  U.S.S.G. § 1B1.13.  Among other definitions, the statements indicate that extraordinary and compelling reasons exist when "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."  *Id.* § 1B1.13(b)(1)(C).

That appears to be the case for Mr. Aguilera.  He has a medical condition that requires long-term or specialized medical care.  He has a prosthetic right eye and glaucoma in his left eye.  The doctors at Shiley Eye Institute recommended: (1) that Mr. Aguilera has regular eye appointments and that he sees an eye specialist within six months of his last visit in December 2022; (2) that he receives regular prednisolone eye drops for his left eye; and (3) that Mr. Aguilera is allowed to appropriately clean his right eye socket and prosthetic eye to avoid infection.  These recommendations do not appear to have been followed.  Mr. Aguilera has not seen an eye specialist in the twelve months he has been in custody.  The facility has failed to timely renew his prescription for prednisolone eye drops, and Mr. Aguilera has not been allowed access to his prosthetic eye removal tool so he can appropriately clean his eye socket and prosthetic eye.

Because Mr. Aguilera has only one functioning eye, and because he has glaucoma in this eye, without appropriate care, he runs the risk of serious deterioration in health—

that is, blindness. Additionally, failing to appropriately clean his prosthetic eye and socket apparently increases his risk for infection.

The Government argues first that the Court took Mr. Aguilera's medical conditions into consideration at the time Mr. Aguilera was sentenced, departing downward from the guideline range. Although this is true, the Court did not take into consideration that the BOP would fail to provide Mr. Aguilera the routine medical care he needed to preserve his left eye. The Government further argues that Mr. Aguilera is scheduled to see an optometrist on January 24, 2024. However, the Government fails to see in Mr. Aguilera's moving papers that this appointment was cancelled because there was no one at the BOP available to transport Mr. Aguilera to the appointment. (Supplemental Motion Ex. F.) Mr. Aguilera appears to fall squarely within the confines of U.S.S.G. § 1B1.13(b)(1)(C). *See United States v. Hussain*, No. 19-cr-40 (PKC) 2023 WL 4529625 (S.D.N.Y. July 12, 2023) (compassionate release granted where glaucoma left defendant blind in his right eye with 20% functionality in his left, leading to complaints of worsening vision, chronic headaches, and dizziness partly brought on by delays in receiving medical treatment from specialists in prison).

### C. Section 3553(a) Factors

Even if the Court finds "extraordinary and compelling reasons" exist for modifying Mr. Aguilera's sentence, it still must consider the factors under Section 3553(a). It is true that the offense committed by Mr. Aguilera was a serious one. In addition, there are concerns about avoiding unwarranted disparities with other defendants charged with similar crimes. However, because of Mr. Aguilera's untreated medical conditions, his time in custody has been more difficult than other individuals who did not have similar afflictions. In addition, because of Mr. Aguilera's physical limitations, the chances of his reoffending are low. Therefore, the Court finds the Section 3553(a) factors do not weigh against releasing Mr. Aguilera early.

## III. CONCLUSION

Because Mr. Aguilera's untreated medical conditions amount to "extraordinary and compelling reasons" justifying his earlier release from custody, and because a reduction in his sentence is consistent with applicable policy statements issued by the Sentencing Commission, the Court **GRANTS** Mr. Aguilera's Motions to Reduce Sentence. (ECF Nos. 98, 108.) The Court reduces Mr. Aguilera's sentence to a time served sentence.

This sentence will be followed by a three-year term of supervised release. The Court adopts all mandatory and standard conditions of supervised release, which are attached to this order. Further, as an alternative to the remaining custodial time on Mr. Aguilera's sentence, the Court adds the following special condition: Mr. Aguilera shall be placed in home incarceration for a period of ten months and restricted to his residence except for employment, education, religious services, medical, substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities as pre-approved by the probation officer. Afterwards, Mr. Aguilera will serve the remainder of his three-year supervised release term without home incarceration. Monitoring is at the discretion of the Probation Department. Defendant may be required to pay the costs of monitoring. The Court will issue an Amended Judgment that includes this special condition.

Finally, to permit an orderly transition and release, this Order is **STAYED** for fourteen days.

**IT IS SO ORDERED.**

DATED: April 23, 2024

Hon. Cynthia Bashant
United States District Judge

## Conditions of Supervised Release

### MANDATORY CONDITIONS

(1) The defendant shall not commit another federal, state or local offense (*see* 18 U.S.C. § 3583(d)).

(2) The defendant shall not unlawfully possess a controlled substance (*see* 18 U.S.C. § 3583(d)).

(3) The defendant who is convicted for a domestic violence crime as defined in 18 U.S.C. § 3561(b) for the first time shall attend a public, private, or private non-profit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is available within a 50-mile radius of the legal residence of the defendant (*see* 18 U.S.C. § 3583(d)).

(4) The defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on supervised release and at least two periodic drug tests thereafter (as determined by the court) for use of a controlled substance, but the condition stated in this paragraph may be ameliorated or suspended by the court for any individual defendant if the defendant's presentence report or other reliable information indicates a low risk of future substance abuse by the defendant (*see* 18 U.S.C. § 3583(d)).

(5) If a fine is imposed and has not been paid upon release to supervised release, the defendant shall adhere to an installment schedule to pay that fine (*see* 18 U.S.C. § 3624(e)).

(6) The defendant shall (A) make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A, or any other statute authorizing a sentence of restitution; and (B) pay the assessment imposed in accordance with 18 U.S.C. § 3013. If there is a court-established payment schedule for making restitution or paying the assessment (*see* 18 U.S.C. § 3572(d)), the defendant shall adhere to the schedule.

(7) If the defendant is required to register under the Sex Offender Registration and Notification Act, the defendant shall comply with the requirements of that Act (*see* 18 U.S.C. § 3583(d)).

(8) The defendant shall submit to the collection of a DNA sample from the defendant at the direction of the United States Probation Office if the collection of such a sample is authorized pursuant to section 3 of

the DNA Analysis Backlog Elimination Act of 2000 (34 U.S.C. § 40702).

## "STANDARD" CONDITIONS

(1) The defendant shall report to the probation office in the federal judicial district where he or she is authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs the defendant to report to a different probation office or within a different time frame.

(2) After initially reporting to the probation office, the defendant will receive instructions from the court or the probation officer about how and when to report to the probation officer, and the defendant shall report to the probation officer as instructed.

(3) The defendant shall not knowingly leave the federal judicial district where he or she is authorized to reside without first getting permission from the court or the probation officer.

(4) The defendant shall answer truthfully the questions asked by the probation officer.

(5) The defendant shall live at a place approved by the probation officer. If the defendant plans to change where he or she lives or anything about his or her living arrangements (such as the people the defendant lives with), the defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances,

      the defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

(6) The defendant shall allow the probation officer to visit the defendant at any time at his or her home or elsewhere, and the defendant shall permit the probation officer to take any items prohibited by the conditions of the defendant's supervision that he or she observes in plain view.

(7) The defendant shall work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses the defendant from doing so. If the defendant does not have full-time employment he or she shall try to find full-time employment, unless the probation officer excuses the defendant from doing so. If the defendant plans to change where the defendant works or anything about his or her work (such as the position or the job responsibilities), the defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, the defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

(8) The defendant shall not communicate or interact with someone the defendant knows is engaged in criminal activity. If the defendant knows someone has been convicted of a felony, the defendant shall not knowingly communicate or interact with that person without first getting the permission of the probation officer.

(9) If the defendant is arrested or questioned by a law enforcement officer, the defendant shall notify the probation officer within 72 hours.

(10) The defendant shall not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (*i.e.*, anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers).

(11) The defendant shall not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

(12) If the probation officer determines that the defendant poses a risk to another person (including an organization), the probation officer may require the defendant to notify the person about the risk and the defendant shall comply with that instruction. The probation officer may contact the person and confirm that the defendant has notified the person about the risk.

(13) The defendant shall follow the instructions of the probation officer related to the conditions of supervision.